FILED

2008 Sep-23  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

DARCY C. MOSELEY,         )

    PLAINTIFF,         )

VS.         )         2:06-cv-4651-JHH

MICHAEL J. ASTRUE[1],         )
COMMISSIONER OF THE
SOCIAL SECURITY         )
ADMINISTRATION,
         )

    DEFENDANT.

## MEMORANDUM OF DECISION

Plaintiff Darcy C. Moseley brings this action pursuant to sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the decision denying benefits is due to be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Under Federal Rule of Civil Procedure 25(d)(1), Astrue is automatically substituted as the party-defendant for her official predecessor. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits on June 25, 2002, alleging a disability onset date of June 13, 2002.  The application was denied initially and also upon reconsideration.  (Tr. 124-30.)  Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  The hearing was held on July 1, 2004 in Birmingham, Alabama.  In his July 28, 2005 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act and thus ineligible for disability insurance benefits.  (Tr. 20-47).  After the Appeals Council denied plaintiff's request for review of the decision of the ALJ, (tr. 5-7), the decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  See 20 C.F.R. §§ 404.981(a)(5), 422.210(a).

## II.  ADMINISTRATIVE RECORD

Plaintiff was born on February 15, 1962 and at the time of the hearing was 42 years old.  (Tr. 499.) Plaintiff completed two years of college and has an associate's degree in business administration.  (Id.)  Plaintiff had previously worked as a secretary, customer service representative, housekeeper and production worker. (Tr. 156, 500-04.)  According to plaintiff, she has been unable to engage in substantial gainful activity since June 13, 2002, when she became

2

unable to work.  (Tr. 499.)  In her disability report, plaintiff alleged the following conditions which prevented her from working: a brain tumor on the right side of her brain in the roots of her neck; sarcoidosis in the lungs; three tumors on her vertebrae causing headaches, backaches, depression, confusion, mood swings and swelling in her feet, ankles and knees.  (Tr. 155.)

At the hearing, plaintiff stated that she takes steriods to treat her sarcoidosis of the lungs.  (Tr. 504-05.) Her condition causes shortness of breath.  (Id.)  As a result of the steriods, plaintiff testified that she has developed arthritis in her hands, knees, and feet which cause pain "every day . . . 24 [hours a day], 7 [days a week]," with the worst pain being in her knees and feet.  (Tr. 505.)  To treat the pain, she testified that she takes Mobic, places heating pads her knees, and soaks her feet in Epson salt.  (Id.)  On a scale of one to ten, plaintiff rated this pain at a five, with her medication.[2]  (Tr. 506.)  Her arthritis and lower back pain causes difficulty sitting for longer than 20 to 30 minutes at a time, standing for more than 15 to 20 minutes at a time, walking, bending, lifting, and climbing stairs.  (Tr. 509-13.)  Plaintiff testified that she is unable to lift a gallon of milk because of the

---

[2] Plaintiff stated that she has more bad days than good days with her arthritis.  (Tr. 507.) When asked at the hearing how many bad days per week she experiences, plaintiff stated "[f]ive days, Monday through Friday."  (Tr. 507-08.)  Plaintiff did not provide an explanation for the reprieve from her arthritis pain on the weekends.

pain.  (Tr. 511,522.)  Further, plaintiff stated that she has trouble with her balance, caused by "muscle spasm going down both . . . legs," although no doctor has ever suggested the use of assistive devices to walk.  (Tr. 506-07.)  She stated that her primary physician advised her that she needs to elevate her feet for about one hour during the day and again before she goes to sleep.  (Id.)

Plaintiff also testified about her chronic headaches.  She testified that she has suffered from these headaches for two and a half years and that they last "all day."[3]  (Tr. 514.)  She stated that activity does not make them worse, but that the normally occur in the mornings.  (Tr. 515, 520.)  She takes 800 mg of Neurotin, three times a day, to help with the headaches, but also has to lay down for a couple of hours with a warm compress on her temples.  (Id.)  The medicine for her headaches makes her drowsy, and bright lights and weather changes make her headaches worse.  (Id.)

As far as daily activities, plaintiff testified that she is limited in what she does.  Plaintiff lives with her son and daughter who help her with many of her activities.  She does not drive because "her children told [her] that [she] forget[s] a lot of things" like "where [she is] going or what [she] need[s] to do."  (Tr. 517.)

---

[3]  Later in her testimony, plaintiff stated that her headaches normally last three hours. (Tr. 519.)

4

She attends a three hour church service on Sundays, but must take her strongest medication before she goes to church.  (Id.)  She shops at Wal-Mart for groceries and other things and has friends that visit her at her house.  (Tr. 518.)   She can carry the groceries, if they are not too heavy; her son helps her with the heavy ones.  (Tr. 511.)  She also likes to do crafts, such as making children's bows, as a hobby and works on those crafts a couple of hours a week.  (Tr. 518.)  Her daughter does all the cooking in the household and her son cleans up after dinner. (Tr. 511.)

## III.  THE DECISION OF THE ALJ

After a thorough examination of the medical evidence presented by plaintiff (see tr. at 23-31), the ALJ found that plaintiff had the following severe impairments: pulmonary sarcoidosis; headaches; mild compression of the thoracic spine; mild degenerative disc disease; bilateral knee pain; right lower knee pain; skin rash; hepatitis B; adjustment disorder with depression and anxiety; and a full scale IQ of 70, indicating borderline intelligence.  (Tr. 31, 46.) In addition, after reviewing the totality of the evidence, the ALJ specifically found that plaintiff's daily life activities rebutted any presumption of her having had mental retardation prior to the age of 22.  (Tr. 33-34.)  The ALJ found that plaintiff had the residual functional capacity to perform less than a full range of sedentary work, with the

5

following limitations: a temperature-controlled environment; occasional bending, stooping, and squatting; and no climbing, pushing/pulling motions with the lower extremities, driving, or work around unprotected heights. (Id.) The ALJ then found that plaintiff could perform her past relevant work as a secretary. (Tr. 46-47.)

## IV.  APPLICABLE SUBSTANTIVE LAW

"[T]he ultimate burden of proving disability is on the claimant." " Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also 20 C.F.R. § 416.905(a).

Determination of disability under the Social Security Act requires a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates.

Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work.  See Gibson v. Heckler, 762 F.2d 1516, 1518 (11th Cir. 1985).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors."  20 C.F.R. §§

7

416.920(a)(4)(v) and 416.920(g).

## V.  STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  Sections 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence.  Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted).  If

8

supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance.." Lamb, 847 F.2d at 701.

## VI.  ANALYSIS

The plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. Plaintiff's arguments center around her apparent contention that she has a disabling mental impairment which prevents her from working.  Plaintiff appears to argue that she has a disabling mental impairment and that her depression is a disabling impairment.  Plaintiff also contends that the ALJ did not consider her impairments in combination.

### A.  Disabling Mental Impairment and Depression

Plaintiff implies throughout her brief that the ALJ erred when he did not find that she has a disabling mental impairment.  This argument fails. The lengthy medical evidence submitted by plaintiff reveals that plaintiff has never been

9

treated for any mental impairment.  Instead, the consultative evaluation by Dr.

Meneese notes any mental limitations as mild or non-existent and that "[g]iven

appropriate psychiatric and vocational rehabilitative treatment, [plaintiff]'s 6-12

month prognosis is good for improvement in functioning to the point where she

could successfully obtain and maintain gainful employment." (Tr. 483.)  Plaintiff

has never even had "an episode of decompensation or hospitalization due to her

mental impairment." (Tr. 35.)  None of the many medications taken by plaintiff

relate in any way to a mental impairment.  At most, the evidence supports a

finding of mild to moderate limitations caused by her mental impairment.  (See tr.

36.)   The finding of the ALJ that plaintiff does not have a disabling mental

impairment is supported by substantial evidence.

Plaintiff seems to contend, based on Dr. Huggins's opinion, she has a

disabling mental impairment.  Plaintiff first contends that the ALJ should have

given the opinion of Dr. Huggins greater weight because of his profession.

Although the opinion of a specialist is given more weight regarding issues related

to that doctor's specialty than the opinion of a non-specialist, 20 C.F.R. §

404.1527(d)(5), plaintiff does not explain why Dr. Huggins, a psychiatrist, is more

specialized than Dr. Meneese, a clinical neuro-psychologist.   Instead, after a

review of the entire record, the ALJ provides specific reasons for discounting the

10

opinion of Dr. Huggins.  The ALJ noted that Dr. Huggins's opinions were inconsistent with both the other medical records in the record and with his own treatment notes.  Dr. Huggins' opinions were also incompatible with plaintiff's daily activities and with all previous reports of her interactions with superiors and others in a working environment.  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).  The ALJ did not err in assigning minimal weight to the opinion of Dr. Huggins.

Moreover, substantial evidence supports the conclusion of the ALJ that plaintiff did not qualify for benefits under Listing 12.05 for mental retardation. The introductory paragraph of 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" -- i.e. before age 22.  A claimant meets the criteria for presumptive disability under 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70, inclusive, and evidence of an additional mental or physical impairment that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.05C.   In Hodges v. Barnhart, the Eleventh Circuit held that there is a rebuttable presumption that a

11

claimant manifested deficits in adaptive functioning before the age of 22 if the

claimant established a valid I.Q. score between 60-70.  276 F.3d 1265, 1268-69

(11th Cir. 2001).  The Commissioner, however, may rebut this presumption with

evidence of sudden trauma causing mental retardation or evidence of a claimant's

daily activities.  Id.   This holding is consistent with earlier case law holding that a

low I.Q. score, however, is not conclusive of mental retardation where the I.Q.

score is inconsistent with other evidence in the record.  Popp v. Heckler, 779 F.2d

1497, 1499 (11th Cir. 1986).

A psychological evaluation on September 8, 2004 showed a full scale I.Q.

of 70.  Although the ALJ accepted the I.Q. test as a valid assessment of plaintiff's

mental capabilities at age 42, the ALJ found that evidence in the record rebutted

the presumption created by this I.Q. evidence.  See Hodges, 276 F.3d at 1268-69.

The ALJ relied upon plaintiff's "lengthy and successful work history," educational

history, daily activities and lack of any intellect-affecting injuries in finding the

presumption rebutted.  Plaintiff does not challenge any of these findings, but

instead opines that plaintiff "never claimed a life-long history of mild mental

retardation" and "that there had to be something which caused her scores to be so

low, whether it was depression or medication side effects or something else."

There is no evidence in the record to support such a proposition.  Moreover, the

12

ALJ noted that there was nothing in the record to support the conclusion of any "organic injuries which would have decreased her intellectual functioning." (Tr. 34.)

Finally, plaintiff appears to argue that her depression is a disabling impairment. Plaintiff has no evidence to support this contention. The record is devoid of any evidence showing that her depression has produced any functional limitations. Instead, the evidence actually supports the conclusion that plaintiff is able to work. Dr. Sullivan, who noted plaintiff's depression, concluded that "[b]ased on objective medical findings of this claimant's ability, she is without difficulty and despite impairments physically able to do all work related activities . . . ." (Tr. 286.) In addition, Dr. Meneese diagnosed plaintiff with depression, but did not indicate any functional limitations associated with the depression and concluded that plaintiff is able to work. (Tr. 483.) The mere diagnosis of depression does not determine disability; the disability must affect the individual's ability to function in the workplace. See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).

For all of these reasons, the court finds that the ALJ's finding that plaintiff does not have a disabling mental impairment is supported by substantial evidence and that the ALJ applied the correct legal standards in making this determination.

13

*B.  Impairments in Combination*

Where a claimant has alleged several impairments, the ALJ has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled.  See Jones v. Dept. of Health and Human Servs., 941 F.2d 1529 (11th Cir. 1991).   The Eleventh Circuit has repeatedly stated that statements by an ALJ in his decision that the ALJ considered the impairments in combination is sufficient.  For example, in Wheeler v. Heckler, the Eleventh Circuit found the following statement of the ALJ regarding combined impairment adequate: "[B]ased upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months. 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis in original).  Similarly, in Wilson v. Barnhart, the Eleventh Circuit found this statement sufficient" "the medical evidence establishes that [Wilson] had [several injuries] which constitute a severe impairment, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed. . . ."  284 F.3d 1219, 1224 (11th Cir. 2002).

Here, the ALJ specifically found that "the claimant does not have

14

impairments, individually or collectively, which meet of equal the criteria of an impairment listed in Appendix 1, Subpart P, 20 CFR Part 404." (Tr. 32.)  In his findings he also made the following conclusion: "The claimant does not have an impairment or combination of impairments [which] meets or equals on of the listed impairments . . . ." (Tr. 46.)  Under the case law in the Eleventh Circuit, the determinations of the ALJ evidences consideration of the combined effect of plaintiff's impairments.  See Wilson, 284 F.23d at 1224; Jones, 941 F.2d at 1533; Wheeler, 784 F.2d at 1076.

## VII.  CONCLUSION

In summary, the court concludes that the determination of the ALJ that plaintiff is not disabled was supported by substantial evidence and proper legal standards were applied in reaching this determination.  The final decision of the Commissioner, therefore, is due to be affirmed.

A separate order will be entered.

**DONE** this the ___23rd___ day of September, 2008.

_____

SENIOR UNITED STATES DISTRICT JUDGE